UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEQUOIA BENEFITS & INSURANCE SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAGEVIEW ADVISORY GROUP, INC., LUCIANO COSTANTINI, SCOTT ONDEK, AND DOES 1–50,<br><br>Defendants. | No. 20-8089 WHA<br><br>**ORDER RE MOTIONS TO STRIKE AND DISMISS** |
| LUCIANO COSTANTINI and SCOTT ONDEK,<br><br>Counterclaimants,<br><br>v.<br><br>SEQUOIA BENEFITS & INSURANCE SERVICES, LLC, DBA SEQUOIA CONSULING GROUP and DOES 1–10,<br><br>Counter-Defendants. | |

**INTRODUCTION**

In this business dispute involving allegations of trade-secret misappropriation, breach of confidentiality, defamation, and unenforceable non-compete contracts, plaintiff moves to strike and dismiss the counterclaims. Because the pleading fails to state a claim for intentional

interference with prospective economic advantage, as to that counterclaim, the motion is **GRANTED**. Plaintiff does not show that the alleged statement that counterclaimants committed criminal acts was reasonably related to this anticipated litigation, so the anti-SLAPP motion is **DENIED**.

## STATEMENT

Plaintiff Sequoia Benefits & Insurance Services, LLC, is a leading 401(k) advisory firm, assisting "clients with retirement plan design, fiduciary governance, investment due diligence, program management, and compliance" (Dkt. No. 17 at ¶ 12). As a competitor in the 401(k) services industry, "Sequoia has spent millions of dollars over ten years building its highly confidential business plans, strategies, compensation programs, investment strategies, and technology, which are at issue in this lawsuit" (*id.* at ¶ 14).

Luciano Costantini and Scott Ondek are former employees of Sequoia. Costantini was director of retirement services at Sequoia and Ondek was a senior 401(k) advisor. On November 2, 2020, Costantini and Ondek "abruptly" resigned their positions at Sequoia to join Sequoia's competitor, defendant Sageview Advisory Group, Inc. (*id.* at ¶ 17). On November 3, defendant Sageview sent a marketing email to Sequoia's clients announcing that Costantini and Ondek had left Sequoia to join Sageview.

Sequoia alleges that just before they resigned, Costantini and Ondek downloaded and copied Sequoia's confidential or proprietary information. Sequoia alleges Ondek "improperly downloaded Sequoia's 401(k) Contact Premium Report, . . . client pricing models, reports on Sequoia's competitors, and reports on Sequoia's investment strategies" (*id.* at ¶ 18). Sequoia alleges Costantini "downloaded and exported a report titled 'Finance Report 3.0 Consulting Fees' . . . [which] contains highly confidential information relating to client billing preferences, consulting fees negotiated with clients, and Sequoia's proprietary pricing strategy" (*id.* at ¶ 19).

Sequoia alleges claims for trade secret misappropriation under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836–1839 *et seq.*, and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*, and interference with prospective economic advantage against

all three defendants, and breach of contract, breach of loyalty, and intentional interference with contractual relations against Costantini and Ondek.

Costantini and Ondek have filed counterclaims. They allege their employment agreements with Sequioa contained unenforceable non-solicitation provisions prohibiting them from (1) soliciting Sequoia's clients for three years after their employment, and (2) soliciting Sequoia's employee's, their former co-workers, for employment with Sequoia's competitors for the same period. Counterclaimants seek declaratory relief that the non-solicitation provisions are void and unenforceable under California's Business and Professions Code § 16600. Counterclaimants further allege that shortly after they resigned, Sequoia represented to its clients that counterclaimants had stolen Sequoia's "sensitive employer information" and committed criminal acts (Dkt. No. 42 at ¶ 24). Counterclaimants assert claims for defamation and intentional interference with prospective economic advantage.

In addition, Costantini alleges Sequoia agreed to pay him a "30% commission on new and existing clients" but "unilaterally changed the commission rate to 25%" during his employment (*id.* at ¶¶ 13–14). Costantini alleges Sequoia did not pay him the agreed-upon compensation. He alleges claims for breach of contract, failure to pay wages, Cal. Lab. Code § 201, and waiting-time penalties, Cal. Lab. Code § 203.

In the instant motion, Sequoia makes a special motion to strike the defamation and intentional interference with prospective economic advantage counterclaims under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. Sequoia also moves to dismiss the counterclaims under FRCP 12(b)(6). This order follows full briefing and a hearing held telephonically.

**ANALYSIS**

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the complaint. To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must plead events that allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court accepts

3

well-pled factual allegations as true and construes the pleadings in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).

### 1. ANTI-SLAPP.

California's anti-SLAPP statute protects defendants from litigation designed to quell public participation by "shift[ing] burdens of proof and fees onto the lawsuit filer to compensate the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech and petition rights." *FlimOn.com Inc. v. DoubleVerify Inc*, 7 Cal.5th 133, 143 (2019) (cleaned up). Under the anti-SLAPP statute, "any written or oral statement or writing made *in connection with* an issue under consideration or review by a . . . judicial body" is deemed to be an "act in furtherance of a person's right of petition or free speech," and, therefore, any claim for relief based upon such a statement is subject to a special motion to strike. Cal. Civ. Proc. Code § 425.16 (emphasis added).

Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of America, Inc. v. Ctr. for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Sequoia moves to strike the defamation and intentional interference with prospective economic advantage counterclaims under California's anti-SLAPP statute on the ground that they arise from statements made in connection with this litigation and are therefore privileged. The analysis is identical for both counterclaims because they are based on the same statements.

Sequoia relies on *Neville v. Chudacoff*, 160 Cal.App.4th 1255 (2008). There, an "employer [Maxsecurity] fired one of its employees [Neville] amid allegations that the employee had misappropriated customer lists and solicited his employer's customers to start a competing business." *Id.* at 1259. About four months before the employer sued the former employee, the employer's lawyer drafted a letter which the employer sent to its current and former customers. *Ibid.* "The reference line of the Letter read, '*Maxsecurity v. Mark Neville, dba ABD Audio and Video*,'" the letter stated:

4

> Please be advised that this office represents Maxsecurity in the above-matter [*sic*]. It has recently come to our attention that a former employee of Maxsecurity may have been in contact with you, or may attempt to contact you. The name of the former employee is Mark Neville, and he may be representing himself as ABD Audio and Video.
>
> Mr. Neville is in direct violation of an employment and confidentiality agreement he had with Maxsecurity. Mr. Neville's relationship with Maxsecurity ended at the end of last year. Contact and/or communication with Maxsecurity customers was, and is, specifically prohibited under his employment contract. We have notified Mr. Neville of his breach and shall be aggressively pursue [*sic*] all available remedies.
>
> Any work contracted with Mr. Neville or his company would be in violation of our agreement with him. In order to avoid any involvement in litigation that my [*sic*] arise between us and Mr. Neville (as a material witness, or otherwise), we suggest that you have no further dealings with Mr. Neville or his company. You should know that any monies paid to him or his company properly belong to Maxsecurity, and we shall, if necessary, seek an accounting of all monies paid out.

*Id.* at 1259–60. About nine months after firing the employee, and about four months after sending the letter, the employer filed suit against the employee for the employee's alleged misappropriation of the employer's customer lists. *Id.* at 1260. The employee cross-claimed against the employer for defamation based on the letter. *Ibid.*

After reviewing the caselaw, *Neville* held "that a statement is 'in connection with' litigation under Section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." *Id.* at 1266 (footnote omitted). The letter satisfied that test in part because it "constituted an attempt to prevent further misuse of Maxsecurity's proprietary information, and thereby mitigate Maxsecurity's potential damage," and because it "contained no statements of fact concerning Neville that were not based on or related to the allegations that formed the basis of Maxsecurity's claims." *Id.* at 1268.

Here, however, the allegations are (Dkt. No. 42 at ¶ 24):

> [I]n November 2020, shortly after [counterclaimants] resigned from Sequoia, Sequoia called many of their customers and stated that [counterclaimants] stole employee and employer information, accessed [Sequoia's] information "without authorization,"

5

> committed criminal acts, and are dishonest, and that therefore these customers should not do business with [counterclaimants]. For example, in November 2020 Sequoia employee Spencer Christek, in the scope of his employment for Sequoia, was on a call with Arsenal Bio, a Sequoia customer, and told Arsenal representative Syndey Litmann that [counterclaimants] stole "sensitive employer information." Similarly, in November 2020, Matt Roberts, a senior Sequoia employee, was conducting a team meeting of Sequoia employees and, in the scope of his employment with Sequoia, told the rest of the team that [counterclaimants] took sensitive employer and employee information. Mr. Roberts encouraged the team members to call clients and share that "information."

*Neville* is distinguishable for three reasons. *First*, the statements were not made by Sequoia's attorney in a formal writing. *Second*, the statements made no reference to contemplated litigation. *Third*, Sequoia made at least one factual statement about counterclaimants that was not based on or related to Sequoia's civil claims against counterclaimants; namely, that they committed criminal acts.

Sequoia also argues the statements are protected by the litigation privilege. Cal. Civ. Proc. Code § 47(b).

The principal purpose of the litigation privilege "is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990). The litigation privilege "promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings." *Ibid.* (citation omitted). "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* at 212.

> The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action. A good example of an application of the principle is found in the cases holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action.

*Silberg*, 50 Cal. 3d at 219–20.

The privilege also applies to pre-litigation communications. *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993).

"The reasonable relevancy requirement of Section 47 is analogous to the 'in connection with' standard of Section 425.16, subdivision (e)(2)." *Neville*, 160 Cal.App.4th at 1266.

In *Nguyen v. Proton Tech. Corp.*, 69 Cal.App.4th 140 (1999), the defendant-lawyer sent a pre-litigation demand letter to plaintiff's employer on behalf of defendant's client, a competitor of plaintiff's employer. The letter read, in part:

> This law firm represents Proton Technology Corporation on a continuing basis in matters involving litigation. This letter is to provide clear warning to you that your company's recent acts of unfair competition will not be tolerated. Specifically, your employee . . . has been raiding Proton's employees to induce them to go to work for Excelsior. . . . In addition, a former Proton sales representative, [plaintiff],who recently began working for Excelsior, has been soliciting Proton's customers to induce them to switch their business to Excelsior. . . . We think you should be aware that [plaintiff] was working for Proton under a work furlough program sponsored by the Santa Clara County Probation Department. [Plaintiff] was in prison for repeatedly and violently assaulting his wife. We have information to prove that Excelsior and . . . former Proton employees were involved in a conspiracy to injure Proton's business . . . .

*Id.* at 143–44. The plaintiff sued the lawyer for, *inter alia*, libel and slander. *Id.* a 145. The lawyer defended on the ground that the statements were privileged under the litigation privilege. *Ibid.*

The California Court of Appeal held the reference to the plaintiff's criminal history fell outside the litigation privilege because "any 'connection' between such a conviction and the civil unfair competition focus of [the] demand letter [was], to be charitable about it, tenuous." *Id.* at 151. The opinion went on state that "the use of the criminal records of individuals in purely civil disputes . . . is and should be fraught with peril." *Id.* at 152.

So too here. At this stage, where the counterclaim's well-pled factual allegations are taken as true and viewed in the light most favorable to the counterclaim, Sequoia has not shown that accusing counterclaimants of having committed criminal acts was a statement made in connection with its civil claims against counterclaimants.

Therefore, the motion to strike the defamation and intentional interference with prospective economic advantage counterclaims is **DENIED**.

The anti-SLAPP motion is **DENIED WITHOUT PREJUDICE** to making the motion again in a motion for summary judgment after discovery into the content and context of the alleged defamatory statements. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018).

### 2. DEFAMATION.

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citation omitted).

Because counterclaimants are not public figures and the alleged defamatory statements did not address a matter of public concern, counterclaimants are not required to allege facts showing Sequoia acted with actual malice. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345–47 (1974).

Read as a whole, the counterclaim fairly alleges Sequoia told its customers that counterclaimants committed criminal theft of Sequoia's confidential employer and employee information. Although the allegations include non-actionable statements of opinion, *i.e.*, that counterclaimants are "dishonest" and customers should not do business with them, the statement that counterclaimants criminally stole confidential information constitutes an actionable statement of fact because it is a "provably false factual assertion." *Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002).

Moreover, while the statements that counterclaimants "stole" confidential employer and employee information arguably had some relation to this litigation, the accusation of criminal acts the statements outside the privilege because it was not reasonably relevant to Sequoia's contemplated civil claims against counterclaimants.

Therefore, the motion to dismiss the defamation counterclaim is **DENIED**.

### 3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

The pleading does not, however, sufficiently state a claim for intentional interference with prospective economic advantage.

> Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action.

*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal.5th 505, 512 (2017) (citation omitted).

Here, the allegations in support of the intentional interference claim are (Dkt. No. 42 at ¶¶ 24, 52–55):

> [I]n November 2020, shortly after [counterclaimants] resigned from Sequoia, Sequoia called many of their customers and stated that [counterclaimants] stole employee and employer information, accessed [Sequoia's] information "without authorization," committed criminal acts, and are dishonest, and that therefore these customers should not do business with [counterclaimants]. For example, in November 2020 Sequoia employee Spencer Christek, in the scope of his employment for Sequoia, was on a call with Arsenal Bio, a Sequoia customer, and told Arsenal representative Syndey Litmann that [counterclaimants] stole "sensitive employer information." Similarly, in November 2020, Matt Roberts, a senior Sequoia employee, was conducting a team meeting of Sequoia employees and, in the scope of his employment with Sequoia, told the rest of the team that [counterclaimants] took sensitive employer and employee information. Mr. Roberts encouraged the team members to call clients and share that "information."
>
> \* \* \*
>
> [Counterclaimants] were in an economic relationship with their former customers that probably would have resulted in an economic benefit to [counterclaimants].
>
> [Sequoia] knew of those relationships.
>
> [Sequoia] engaged in a pattern of conduct intended

9

> to disrupt and/or damage those relationships, including by making defamatory statements about [counterclaimants].
>
> As a result of [Sequoia's] conduct, [counterclaimants'] relationships with their former customers and prospective customers have been damaged, and [counterclaimants] have suffered damages . . . .

Sequoia argues these allegations fail to sufficiently plead the existence of an economic relationship between counterclaimants and a third party. That is true. When read in context, the counterclaim alleges that Sequioa employees bad-mouthed Costantini and Ondek to their *former* customers, not their *current* customers. Counterclaimants do not allege that Sequioa did anything to interfere with an economic relationship either counterclaimant then had. Counterclaimants allege that Sequoia bad-mouthed counterclaimants to *Sequoia's* customers after counterclaimants had left Sequoia.

Even if the counterclaim alleged (it does not) that these customers would have severed their relationship with Sequoia and followed counterclaimants to Sageview but for Sequoia's defamation of counterclaimants, it would not be enough.

Therefore, because the counterclaim fails to allege that Sequoia interfered with a then-existing economic relationship of counterclaimants, the motion to dismiss the counterclaim for intentional interference with prospective economic advantage is **GRANTED**.

### 4. BUSINESS & PROFESSIONS CODE § 16600.

Counterclaimants seek declaratory relief that the non-solicitation provisions in the employment agreements, which prohibit them from soliciting Sequoia's clients and employees for three years after their employment, are void under California's Business and Professions Code § 16600 which states: "Except as otherwise provided by this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

Sequoia argues that the counterclaim should be dismissed because it is repetitive of its own claim for breach of contract. Contrary to its representations in its motion to dismiss, however, Sequoia's claim for breach of contract is predicated both on the confidentiality and non-disclosure provisions and the non-solicitation provisions (*see* Dkt. No. 17 at ¶ 89).

Whereas the counterclaim takes issue exclusively with the non-solicitation provisions (Dkt. No. 42 at ¶¶ 6–10, 26–28). Thus, the claim for breach of contract and the counterclaim under § 16600 are not duplicative. Therefore, the motion to dismiss the § 16600 counterclaim is **DENIED**.

### 5. LABOR CODE § 201 AND § 203.

The third and fourth counterclaims are brought under Labor Code § 201 and § 203 for willful failure to pay wages to Costantini, waiting- time penalties, and attorney's fees. Sequoia argues that to the extent these claims are premised on wages earned outside the three-year limitations period they are barred. The counterclaim alleges that Sequoia did not pay Costantini "for the last quarter of fiscal year 2019 or for fiscal year 2020" (Dkt. No. 42 at ¶ 19).

The claims are well within the three-year limitations period for actions upon a liability created by statute. Cal. Code Civ. Proc. § 338(a).

Therefore, the motion to dismiss the § 201 and § 203 counterclaims is **DENIED**.

### 6. BUSINESS & PROFESSIONS CODE § 17200.

The seventh counterclaim is brought under California's Unfair Competition Law, Bus & Prof. Code §§ 17200 *et seq.*, under the theory that Sequoia is engaged in unfair competition by requiring employees to sign employment agreements with void non-solicitation provisions and by failing to provide a written commission plan as required by California Labor Code Section 2751.

Sequoia argues that the § 17200 counterclaim is impermissibly vague because it does not specify which prong of § 17200 is alleged. Not so. The counterclaim unambiguously states theories under both the unfair and unlawful prongs.

Sequoia also argues that the § 17200 counterclaim should be dismissed because it does not sufficiently allege that Sequoia's violations of California's Business and Professions Code § 16600 and Labor Code § 2751 caused counterclaimants to lose money or property. Sequoia cites no binding authority holding that a contract provision which operates to deprive a party of

business—and therefore income—does not deprive him of money or property as contemplated by § 17200.

Therefore, the motion to dismiss the § 17200 counterclaim is **DENIED**.

## CONCLUSION

The counterclaim for intentional interference with prospective economic advantage is **DISMISSED**. Otherwise, the motion is **DENIED**. The anti-SLAPP motion is **DENIED WITHOUT PREJUDICE** to making the motion again in a motion for summary judgment.

Sequoia must serve its answer to the counterclaims **WITHIN 14 DAYS OF THIS ORDER**. FRCP 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: May 25, 2021

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE