1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

NORTHERN DISTRICT OF CALIFORNIA

8
9
10

SEQUOIA BENEFITS & INSURANCE
SERVICES, LLC,

11                                                    No.  C 20-08089 WHA

Plaintiff,

12
v.
13
                                              **ORDER RE MOTION TO COMPEL**
LUCIANO COSTANTINI, et al.,
14
Defendants.
15

16
17
18

19                              **INTRODUCTION**

20          In this action for trade-secret misappropriation, both sides told the district judge that they

21   saw no occasion to invoke an arbitration clause, and so both sides duly litigated their action in

22   court.  Once, however, the former-employee defendants saw which way the wind was blowing

23   in the action, they reversed course and now move to compel arbitration.  This gamesmanship

24   will not be rewarded.  This order finds the defendants waived their right to invoke the

25   arbitration clause.

26                               **STATEMENT**

27          A previous order lays out the facts of our case (Dkt. No. 85).  Plaintiff Sequoia Benefits

28   & Insurance Services, LLC is a 401(k) advisory firm that has spent substantial sums

developing confidential business plans, strategies, compensation programs, and retirement plan designs.  Defendants Luciano Costantini and Scott Ondek both held senior management positions in Sequoia's 401(k) division before "abruptly" resigning on November 2, 2020, and joining Sequoia's competitor, defendant Sageview Advisory Group, Inc. (Amd. Compl. ¶¶ 12–14, 17).  Both Costantini and Ondek's employment agreements contained arbitration provisions.

The day after Costantini and Ondek resigned, on November 3, Sageview sent a marketing email to Sequoia's clients announcing that Costantini and Ondek had left Sequoia to join Sageview.  Sequoia promptly began an investigation into the departures and learned that, shortly prior to Costantini and Ondek's resignations, they accessed and exported sensitive documents that Sequoia alleges contain its proprietary trade secrets.  In fact, Costantini apparently used his cellphone to photograph several documents on his computer shortly before his departure.  Both defendants also failed to immediately return their company-issued laptops and cellphones.  On November 5, Sequoia's outside counsel contacted defendants regarding their ongoing obligations and requested they cease and desist any solicitation of Sequoia clients or employees and any use of Sequoia trade secrets.   Less than two weeks later, on November 17, Sequoia initiated this action (Compl.; Amd. Compl. ¶¶ 20, 26–27, 50–51; Dkt. Nos. 55-4, 58).

On December 2, Sequoia amended its complaint, after which, on December 10, it filed a motion for preliminary injunction requesting an array of equitable relief, but primarily seeking to enjoin defendants from using any Sequoia trade-secret information or soliciting any of Sequoia's clients (Dkt. No. 21).  The early stages of litigation proceeded with a flurry of activity — defendants answered and moved to dismiss the amended complaint, filed counterclaims, and, after Sequoia moved to dismiss, amended their counterclaims (Dkt. Nos. 25, 27, 28, 38, 42).  A February 2021 order granted expedited discovery and supplemental briefing on the preliminary injunction motion.  On March 11, the parties filed their joint case management statement (Dkt. Nos. 47, 68).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

At the March 18 hearing on the preliminary injunction and defendants' motion to dismiss, an oral ruling granted Sequoia preliminary relief.  For the purposes of the motions to dismiss and for a preliminary injunction, two customer-list spreadsheets were deemed trade secrets.  The oral ruling enjoined defendants from using any of the information they took from Sequoia, whether it qualified as a trade secret or not, which also had to be turned over to counsel.  Sequoia was granted further expedited discovery as to Costantini, Ondek, and at least one other person from SageView in order to determine the full extent of information taken from Sequoia.  On the other hand, defendants were granted expedited discovery from Sequoia "to go in there and try to bust open Sequoia to prove that these are not really trade secrets" (Dkt. No. 74 at 41–44).

The oral ruling denied defendants' motion to dismiss in its entirety and pushed off any lingering matters to the next case management conference.  A May 2021 order then dispatched Sequoia's pending motion to dismiss and anti-SLAPP motion to strike — dismissing defendants' counterclaim for intentional interference but otherwise denying the motions (Dkt. No. 85).  Defendants, switching gears, now move to compel arbitration.

**ANALYSIS**

Congress enacted the Federal Arbitration Act (FAA) in 1925 to counteract a judicial indisposition towards arbitration agreements.  Pursuant to Section 2 of the FAA, an agreement to submit a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  The savings clause concluding Section 2 recognizes that arbitration agreements are subject to general contract principles.  9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Under the FAA, a district court determines "whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The Supreme Court has delineated two gateways for any review of an arbitration provision:  while a court may cross the threshold and make a determination on questions of arbitrability (such as whether the parties are bound to arbitrate), only an arbitrator may analyze procedural questions that grow out of the dispute

3

and bear on its final disposition.  Our court of appeals has held that waiver of the contractual arbitration right by litigation conduct falls squarely into the first category and is suitable for judicial determination.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002); *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016).  Waiver of a contractual arbitration right is disfavored, so the party arguing waiver of arbitration bears a heavy burden of proof.  "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

### 1.    WHICH WAIVER STANDARD APPLIES.

Both parties assert that the federal, rather than California, standard for waiver applies here.  The plain language of Ondek and Costatini's arbitration provisions, however, warrant a more thorough review of the appropriate touchstone.

In *Fisher*, our court of appeals articulated the federal standard for waiver:  "A party seeking to prove waiver of a right to arbitration must demonstrate:  (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Ibid*.  Our court of appeals derived this standard not from California law, but primarily from the Court of Appeals for the Second Circuit.  *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 n. 7 (9th Cir. 2008).

Sixteen years after *Fisher*, our court of appeals clarified how and when federal and state law apply in arbitration agreements.  Arbitration agreements, like all contracts, are subject to general contract principles based on state law.  But the FAA imposes a strong preference for arbitration, which dictates that issues affecting the allocation of power between courts and arbitrators should be decided by federal standards.  *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269–70 (9th Cir. 2002) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59–60 (1995)).  *Sovak* held that waiver of the right to compel arbitration affects the allocation of power between tribunals, and that federal law, not state law, governs, even when an arbitration agreement contains a general state choice-of-law clause.  *Ibid.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Our court of appeals has thus typically applied the *Fisher* test to waiver cases, with the primary exception of *Cox*.  *Cox* applied the state-law test for waiver articulated by the California Supreme Court:

> In determining waiver, a court can consider (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps e.g., taking advantage of judicial discovery procedures not available in arbitration had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Cox*, 533 F.3d at 1124 (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 82 P.3d 727, 733 (Cal. 2003)).  The default presumption under *Sovak* is that arbitration agreements should be evaluated according to federal standards per the FAA.  But arbitration agreements are still contracts.  Parties can thus eschew federal standards for state law so long as that decision is explicit and clearly specified in the agreement.  *Sovak*, 280 F.3d at 1269 (citing *Volt Info. Scis., Inc., v. Bd. of Trs.*, 489 U.S. 468, 479 (1989)).  *Cox* represents the situation where the parties specifically agreed to abide by state law for issues of wavier.  *Cox*, 533 F.3d at 1117.  This order holds that, when evaluating whether a party has waived its arbitration right, the federal *Fisher* standard should be applied unless the parties' agreement unambiguously intended for state law to apply to waiver.  The federal waiver standard would thus still apply even if the parties included a general state choice-of-law provision in the contract.

The differences between the federal and California standards are not illusory.  The *Fisher* test requires the non-moving party to satisfactorily demonstrate knowledge, acts inconsistent with arbitration, and prejudice.  California's *St. Agnes* test, in contrast, lists factors a court may, but is not explicitly compelled, to consider, and only provides general guidance on how to weigh these factors.  *See St. Agnes*, 82 P.3d at 738 (noting that prejudice is a critical consideration).  While some California appellate courts have stated there is no difference between the *Fisher* and *St. Agnes* standards, this order emphasizes that choosing one test over

the other could well affect the final outcome.  *See Bower v. Inter–Con Sec. Sys., Inc.*, 232 Cal. App. 4th 1035, 1041–42 (Cal. Ct. App. 2014); *Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 444 (Cal. Ct. App. 2012).

Turning finally to Ondek and Costatini's employment contracts, their choice-of-law provision recites:  "This agreement shall be governed by and construed in accordance with the laws of the State of California"  (Ondek Agreement § 16, Dkt. No. 95-1; Costantini Agreement § 17, Dkt. No. 95-2).  According to *Sovak*, this sort of general choice-of-law provision does not mandate a state standard for waiver.  Next, Ondek and Costatini's arbitration clause recites, in relevant part (italics added):

> The parties hereby agree that any dispute regarding the terms of this Agreement and/or the employment of Employee with Company . . . shall first be mediated in an attempt to settle such disputes and in the event mediation is unable to resolve said disputes they shall be submitted to binding arbitration pursuant to the provision of Title 9 of Part III of the California *Code of Civil Procedure, commencing at Section 1280 et seq (or any successor or replacement statutes* . . . .
>
> With respect to additional discovery, the parties may obtain discovery in aid of the mediation/arbitration *according to Code of Civil Procedure ' 1283.05* . . . .

(Ondek Agreement § 21; Costantini Agreement § 22).  Here, the arbitration provision specifically cites California's arbitration standards.  But the plain language of the clause invokes California law for the purpose of defining the procedures of any ensuing arbitration between the parties; in other words, it instructs the arbitrator on how to manage procedural issues that emerge during arbitration.  The clause does not specifically apply California law to broader issues concerning the arbitration agreement itself, such as contractual defenses like waiver.

This order agrees with the parties that the federal standard as articulated by *Fisher* guides the analysis of whether defendants waived their right to arbitration.  As defendants do not contest that they had knowledge of their existing right to compel arbitration, this order evaluates prongs two and three of the *Fisher* standard.

United States District Court
Northern District of California

**2.   WHETHER DEFENDANTS ACTED INCONSISTENTLY WITH THEIR ARBITRATION RIGHT.**

The second prong of the *Fisher* test addresses whether a party has acted contrary to their arbitration right.  Defendants argue that this action was filed only six months prior to their exercise of their arbitration provisions, and that they have litigated defensively, and only to the extent required.  Sequoia counters with a list of acts that it characterizes as amounting to a conscious decision to actively litigate before this Court.  This order agrees with Sequoia.

There is no concrete test to determine whether a party acted inconsistently with its arbitration right.  Instead, a holistic approach is taken that considers the totality of the party's actions.  "That is, a party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019); *see also Martin*, 829 F.3d at 1125–26.

Defendants acted inconsistently by filing a motion to dismiss Sequoia's first amended complaint (Dkt. No. 25).  *Martin* stated that "although filing a motion to dismiss that does not address the merits of the case is not sufficient to constitute an inconsistent act, seeking a decision on the merits of an issue may satisfy this element."  *Martin*, 829 F.3d at 1125. Defendants argued in their motion to dismiss that Sequoia's employment agreement was unenforceable for containing invalid non-solicitation provisions per California Business and Professions Code Section 16600, and that the California Uniform Trade Secret Act preempted Sequoia's common law claims.  Both these arguments go to the merits of Sequoia's claims rather than contesting mere procedural issues, and demonstrate that defendants acted inconsistently with their arbitration right.

Defendants have also made inconsistent statements to the Court regarding arbitration. On March 11, 2021, the parties submitted a case management statement pursuant to Civil Local Rule 16-9, which requires the parties to inform the court "[w]hether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation."  The statement recited:  "The Parties do not believe the case is suitable for

references to binding arbitration, a Special Master, or the Judicial Panel on Multidistrict Litigation" (Dkt. No. 68 at 10).  The ensuing case management statement helps set the metes and bounds of an action.  Defendants explicitly, and without qualification, asserted in a statement to the Court that they did not believe this case suitable for reference to binding arbitration.  Defendants make the unconvincing argument that Sequoia drafted the statement — as if their counsel's signature on the document means nothing (Reply Br. 11).  Defendants made independent statements distinguishing their position from Sequoia's stance for several sections of the case management statement, but not for arbitration.  The case management statement strongly indicates that defendants have acted inconsistently for the purposes of finding waiver.

Defendants contend the pendency of the preliminary injunction required them to abide by and litigate various aspects of the case and that those compulsory actions do not indicate they behaved inconsistently.  Specifically, for the case management statement, defendants argue "there was no ability to defer this matter to arbitration at the time the CMS was filed, because the preliminary injunction proceedings were not complete at that time" (Reply Br. 7–11).  And, for the motion to dismiss, defendants contend the "motion for preliminary injunction was still pending. . . .  Had Defendants not filed their motion to dismiss, they would not be able to do so later" (*ibid.*; Br. 12–13;).  Per the employment agreements, the parties agreed to arbitrate "provided, however, that either party may file a request with the court of competent jurisdiction for equitable relief, including but not limited to injunctive relief, pending resolution of any dispute through the arbitration procedure" (Ondek Agreement § 21; Costantini Agreement § 22).  The clause plainly contemplates a party petitioning a court for equitable relief — in order to, for example, maintain the status quo between the parties — *in parallel with a preexisting arbitration*.  Nothing prevented defendants from seeking to compel arbitration as soon as this action commenced and staying all other proceedings except those for the preliminary injunction, as they appear to argue.  Defendants' case management statement, at minimum, could have *prospectively* raised their intent to arbitrate once the preliminary

8

1    injunction proceedings concluded, but it failed to do so.  The pendency of the preliminary

2    injunction motion does not negate defendants' inconsistent behavior.

3         Defendants also argue they asserted their arbitration rights punctually, precluding a

4    finding they acted inconsistently.  Defendants correctly point out that our court of appeals

5    often emphasizes the period of active litigation in cases where waiver occurred, and that the

6    period here between the filing of the complaint and the instant motion (six months, twenty-four

7    days) is on the shorter end of the spectrum (Br. 12; Reply Br. 10–11).   But this order deems

8    the rote time measurement defendants propose too simplistic.  Many district judges, including

9    the undersigned, seek to guide their cases swiftly to trial, so a proper review of whether a party

10   punctually exercised its arbitration right can also consider the time *remaining* till trial.  As it

11   stands, trial here is set for March 1, 2022, which means defendants filed the instant motion just

12   two months prior to the half-way mark of the case (Dkt. No. 87).  This order finds the time

13   elapsed in this action sufficiently prolonged — and the time remaining till trial sufficiently

14   short — to support the conclusion defendants acted inconsistently.

15        Moreover, determining inconsistency ultimately requires a holistic approach, and during

16   the pendency of this action defendants have performed several significant actions inconsistent

17   with an intent to arbitrate.  As explained, these inconsistent actions include defendants' filing

18   of a motion to dismiss that went to the merits, reversing the position they took before the Court

19   on arbitration in the case management statement, and other indicia of inconsistency, such as

20   defendants' filing of counterclaims with an accompanying request for a jury trial (and

21   subsequent amendment of those counterclaims after Sequoia moved to dismiss).  The requisite

22   period of active litigation to find inconsistency is relative and can be found even for shorter

23   time periods when, like here, the moving party's actions during the case's pendency are

24   significant and strongly indicate they have taken material advantage of being in court.

25        In sum, Defendants stood their original position on its head and acted inconsistently with

26   their right to arbitration, satisfying the second prong of the federal *Fisher* test.

27

28

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 3.     WHETHER SEQUOIA WOULD BE PREJUDICED BY ARBITRATION.

The third prong of the *Fisher* test considers whether arbitration would prejudice the non-moving party.  Defendants argue the limited pendency of this action and plaintiff's self-inflicted costs preclude a finding of prejudice, but defendants' gamesmanship ultimately warrants such a finding.

This order pauses to recall that arbitration clauses are often triggered by employers to keep their employees (and former employees) out of court.  Here, the typical arrangement is flipped:  it is former-employee defendants bringing the motion to compel arbitration against former-employer plaintiff, the party that drafted the arbitration agreement.  In this context this order is cognizant of our court of appeals' guidance that the non-moving party must show more than self-inflicted wounds.  *See Newirth*, 931 F.3d at 943–44.  Conduct inconsistent with a right to arbitrate most frequently causes prejudice to the opposing party, but the link is not automatic.  Nevertheless, prejudice can be both monetary or adjudicatory in nature.  *Martin*, 829 F.3d at 1126–28.

Defendants argue their filing of a motion to dismiss did not cause plaintiff any prejudice (Br. 13; Reply Br. 11).  Should this order send this dispute to arbitration, however, plaintiff may well be forced to relitigate the issues on the merits defendants raised in their motion to dismiss, which were denied in their entirety (Dkt. Nos. 72, 74 at 44).  Defendants cite *Groom v. Health Net* for the proposition that no waiver occurred where a party brought multiple demurrers and successfully demurred to two causes of action.  82 Cal. App. 4th 1189 (Cal. Ct. App. 2000).  *Groom* provides little help for defendants.  As explained, the federal standard, not the (pre-*St. Agnes*) California standard in *Groom*, applies here.  Any persuasive value *Groom* may have is also undermined by the mandatory guidance in *Martin* that a party "would be prejudiced if the [non-moving party] got a mulligan on a legal issue it chose to litigate in court and lost," which is what occurred here.  *Martin*, 829 F.3d at 1126–28.  Indeed, *Groom*'s contention that prejudice does not arise from opposing a motion to dismiss on the merits directly conflicts with *Newirth*.  *See Newirth*, 941 F.3d at 944; *cf. Groom*, 82 Cal. App. 4th at 1197.  While it may not be bad law, more recent California cases have criticized *Groom* and

10

1   declined to apply it in favor of other lines of cases: "to the extent there is a conflict, it is

2   *Groom* which is the odd man out." *Burton v. Cruise*, 190 Cal. App. 4th 939, 948 (Cal. Ct.

3   App. 2010); *see also Lewis*, 205 Cal. App. 4th at 451 (same).  Defendants' vow they would not

4   relitigate the issues decided already is inapposite.  *See Newirth*, 931 F.3d at 944.

5        While some level of duplication from parallel proceedings in litigation and arbitration is

6   permissible, Sequoia would also face serious adjudicatory prejudice if this order ultimately

7   compelled arbitration.  Defendants focus on the timing of their motion to assert they acted

8   consistently with their arbitration right and that arbitration would not prejudice Sequoia.

9   Timing does indeed appear critical to the instant motion, but not for the reasons defendants

10  suggest.  The parties filed their case management statement — where defendants stated

11  arbitration was inappropriate for this action — on March 11, 2021.  Defendants reversed

12  course and filed this motion on June 10.   Few events occurred in the interim three months:

13  several administrative motions to seal were addressed; a May 2021 order dismissed defendants

14  intentional interference claim (but otherwise left defendants counterclaims intact) and also

15  denied plaintiff's anti-SLAPP motion to strike; and a scheduling order was filed (Dkt. Nos. 80,

16  85, 87).  On March 18, however, the Court held a hearing regarding Sequoia's preliminary

17  injunction motion.

18       An oral ruling during the March 18 hearing stated the following:

19            So to my mind, the very reason that these two copied this
              information was because it was valuable and they would be able to
20            use it in their new job.  And then they tried to cover it up by not
              coming clean on it in paragraph 19 when this lawsuit started.
21
              This is a troubling scenario for me.  I have seen bogus trade
22            secret claims in the past.  This is one of the stronger ones.  And I
              would be worried if I was on the defense side in this case that
23            maybe even a crime had been committed here.

24            So you ought to be — I am troubled. I'll just say that.

25                              *       *       *

26            I'm on the verge, but I'm not going to require it. I'm
              on the verge of requiring you to send out a notice to all of
27            your clients saying:  The judge has found on a preliminary
              basis that trade secrets were stolen, and be aware.
28

11

1

2

> That wouldn't be good for your people either. But I'm not going to order that now.  I think I don't have a good enough record to order that.  So I'm not going to order that.

3

4

5

6

> But I am going to say this troubles me greatly, this record; and I don't like the way Mr. Costantini — the jury is not going to like it.  A good lawyer will cream Mr. Costantini on cross-examination when it turns out that he took all those pictures, yet in paragraph 19 he didn't reveal it.  That's the end of the case right there.  So you ought to think about that.

7 (Dkt. No. 74 at 42, 46).  It appears that defendants did indeed think hard about their case

8 strategy.  The oral ruling did not mince words and frankly evaluated the serious obstacles

9 defendants face in this dispute.  Since that hearing, little of substance has occurred in this

10 action, and nothing that would suddenly prompt defendants to drastically change their position

11 on arbitration.  Our court of appeals has held that exercise of an arbitration clause to "allow a

12 party to evade future rulings of a federal judge which it fears will be unfavorable" prejudices

13 the non-moving party.  *See Kelly v. Public Utility Dist. No. 2 of Grant County*, 552 Fed. App'x

14 663, 664 (9th Cir. 2014).  This order finds that defendants seek arbitration for the primary

15 reason of forum shopping in an attempt to evade a potentially adverse ruling from this Court.

16 This order further finds that defendants' other justifications for seeking arbitration are

17 pretextual.

18 Defendants argue that "the fact is that as this case has progressed Defendants have won a

19 string of important victories," and that seeking arbitration to forum shop would thus make no

20 sense (Reply Br. 13).  These victories, however, arose from only minor skirmishes.  The denial

21 of Sequoia's special motion to strike and most of its motion to dismiss permitted defendants'

22 claims to proceed but has no bearing on Sequoia's offensive case, and the denial of the motions

23 to seal says nothing about the merit of Sequoia's alleged trade secrets.  This order finds

24 compelling Sequoia's argument it would be prejudiced by defendants' freedom to forum shop

25 and avoid (potentially) unfavorable rulings from this Court.

26 In sum, Sequoia would be prejudiced if this action was sent to arbitration.  Because

27 defendants acted inconsistently in pursuing arbitration and compelling arbitration now would

28 prejudice Sequoia, this order holds that defendants, through their litigation conduct, have

12

waived their right to arbitration under their employment agreements.  The motion to compel

arbitration is **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 9, 2021



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California